MABEL M. BEEDY, Appellant, v. IDA FINNEY *et al.* ·

**Action to Quiet Title:** DEED; REPUGNANCY; NATURE OF ESTATE.
1   A deed of the husband conveying property to the wife read
"hereby sell and convey unto Lucy H. Beedy" and "it is un-
derstood and agreed that the above conveyance is to be good
and valid during the life of said Lucy H. Beedy, the grantee,
but at her death the property, or the value thereof, to revert to
the heirs of said Lucy H. and N. J. Beedy" is not void for
repugnancy, but conveys a life estate.

**Homestead:** CONVEYANCE TO WIFE.    The husband and wife need
2   not join in a conveyance of the homestead by the husband to
the wife.    The homestead character is not affected by such a
conveyance.

3   The character "&" is equivalent to the word "and".

**"Heirs;"** TO WHOM TERM REFERS.    The deed created a life estate
4   in the wife, the remainder to the "heirs" of the grantor "&"
grantee.    The term "heirs" as used in the deed referred to
the issue of grantor and grantee, and not to the children of
either by a former husband or wife.

*Appeal from Allamakee District Court.*—HON. L. E. FEL-
LOWS, Judge.

TUESDAY, OCTOBER 28, 1902.

ACTION to quiet title to three and one-half lots in Post-ville. Decree was entered declaring plaintiff and each of the defendants owner of an undivided one-fourth thereof. The plaintiff appeals.—*Reversed*.

*F. S. Burling* for appellant.

*H. H. Stillwell* for appellees.

LADD, C. J.—The lots in controversy were owned by N. J. Beedy, who, on the 11th day of November, 1880, conveyed them to his wife. The only consideration was love and affection. The deed recited that the grantor does "hereby sell and convey unto the said Lucy H. Beedy" the property described, and that "it is understood and agreed that the above conveyance is to be good and valid during the life of said Lucy H. Beedy, the grantee, but at her death the property, or the value thereof, to revert to the heirs of said Lucy H. and N. J. Beedy." Then follow the usual covenants of seizure and title. The defendants are children of the grantor by a former marriage, but had attained their majority, and were not living with him, when the conveyance was executed. He was then fifty-three years of age, and the grantee forty, and they had been married several years. The plaintiff was born May 30, 1881. N. J. Beedy occupied the premises as a homestead until his death, in January, 1891, and thereafter his wife, Lucy, continued such occupancy up to some time in 1897. She then leased the lots, reserving rooms in the house for the storage of the furniture, and took others in Fayette for a time, and later went to a sanitarium, where she died in August, 1899.

I. The main contention of appellant is that the granting clause conveyed an absolute title, and that the hab·n-dum is in conflict therewith, and, for this reason, void.

1. DEED: repug-nancy: nature of estate.
But the former describes no definite estate. Doubtless, if standing alone, it would pass title, as under our statute a deed is to be construed as

conveying "all the interest of the grantor therein unless a contrary intent can reasonably be inferred from the terms used" (section 2914, Code); and the use of the term "heirs," or other technical words of inheritance, is no longer essential to the transfer of an estate in fee simple (section 2913, Code). But the use of such words may have so strong a bearing in determining the intention of the grantor as to preclude the validity of a subsequent restriction or limitation. Where, however, the premises purport to convey without qualification or description, there can be nothing inconsistent with it in the habendum declaring the character or quality of the thing transferred, for that is not elsewhere defined. The repugnancy, to defeat the habendum, must be such that the intention of the parties either cannot be ascertained from the whole instrument, or, if ascertained, cannot be carried into effect. If, from the entire instrument and attending circumstances, it appears that the grantor intended to enlarge, restrict, or even repugn the conveyancing clause, the habendum will control. It is then to be regarded as an addendum or proviso to the granting clause, which will control it even to the extent of destroying its effect. In short, the modern rule requires the consideration of the deed as a whole, and not in separate and distinct parts, as was formerly done, and the finding of repugnancy avoided whenever all the provisions of the instrument may, without ignoring the accepted canons of construction, be given force and carried into effect. *Bassett v. Budlong*, 77 Mich. 338 (43 N. W. Rep. 984, 18 Am. St. Rep. 404); *Williams v. Bentley*, 27 Pa. 294; *Bodine's Adm'rs v. Authur*, 91 Ky. 53 (14 S. W. Rep. 904, 34 Am. St. Rep. 162), 1 Jones, Real Property, chapter 20; *Berridge v. Glassey*, (Pa.), 56 Am. Rep. 324, and note (s. c. 3 Atl. Rep. 583); *Powers v. Hibbard* (Mich.), 72 N. W. Rep. 339, 346); *Doren v. Gillum*, 136 Ind. 134 (35 N. E. Rep. 1101). In the last case the court said: "Words importing a greater estate than one for life in the

first taker may, by force of context, be so limited as to give the first taker a life estate only, with a remainder over. *Reeder v. Spearman*, 6 Rich. Eq. 89; *Gillam v. Caldwell*, 11 Rich. Eq. 73. The estate may be limited in the habendum, although not mentioned in the premises of a deed, and without the use of the word 'remainder.' *Wager v. Wager*, 1 Serg. & R. 3 4; *Wommack v. Whitmore*, 58 Mo. 448. And the latter part of a deed has been allowed to control, and rendered what seemed to be a fee, a life estate in the first taker. *Prior v. Quackenbush*, 29 Ind. 475." *Montgomery v. Sturdivant*, 41 Cal. 290; *Riggin v. Love*, 72 Ill. 553; *Baskett v. Sellers*, 93 Ky. 2 (19 S. W. Rep. 9); *Humphrey v. Foster*, 13 Grat. 653; 9 Am. & Eng. Enc. Law (2d Ed.) 141. As already indicated, the fee did not pass, because, in the words of the statute, a contrary intent can reasonably be inferred from the terms used. Construing the premises and habendum together, as we are bound to do, their provisions are easily harmonized, and the conclusion reached that but a life estate was conveyed to the wife. The cases cited by appellant are not in point, as in all an absolute fee was passed by the granting clause. See *Pierson v. Lane*, 60 Iowa, 60; *Case v. Dwire*, 60 Iowa, 442; *Teaney v. Mains*, 113 Iowa, 53.

II. The conveyance, though of the homestead, was valid. *Harsh v. Griffin*, 72 Iowa, 608. Section 2205 of the Code of 1873 expressly authorizes the conveyance of either the wife or husband to the other of his property; and section 1990, prohibiting a conveyance of the homestead by either without the other joining therein, evidently has no application to a transfer between husband and wife. The homestead character is not affected by conveyances between them. The section evidently relates to contracts with third persons, and is intended as a guard against its alienation without the concurrence of both husband and wife. *Spoon*

2. HOMESTEAD: conveyance to wife.

*v. Van Fossen*, 53 Iowa, 494; *Burkett v. Burkett*, (Cal.) 20 Pac. Rep. 715, 3 L. R. A. 781., 12 Am. St. Rep. 58.

III.  The deed reads that at the death of the grantee "the property, or the value thereof, to revert to the heirs of Lucy and N. J. Beedy." Plaintiff argues that the term

3. CHARACTER "&" equivalent to word "and".

"heirs" should be construed "children" of the parties named, and that she, being the only fruit of their marriage, is entitled to the property.  Defendant contends that the heirs of both husband and wife were intended.  The character "&" evidently stands for and should be treated as an equivalent to "and." *Hunt v. Smith*, 9 Kan. 153; *Com. v. Clark*, 4 Cush. 596; *Malton v. State*, 29 Tex. App. 527 (16 S. W. Rep. 423); *Pickens v. State*, 58 Ala. 364; *Brown v. State*, 16 Tex. App. 245.  In the last case it was well said that: "This sign of abbreviation has come down to us sanctioned by age and common use for perhaps centuries, and is used even at this day in written instruments, in daily transactions, with such frequency that it may be said to be a part of our language when it is written." "And," according to Webster, is "a particle, which expresses the relation of connection or addition.  It is used to conjoin a word with a word, a clause with a clause, or a sentence with a sentence."  It is a conjunctive, and, if the sentence is to be given a fair construction, means the heirs of both, rather than of each separately.

The fact that the given names of the grantor and grantee are connected, and the Christian names not re-

4. HEIRS: to whom refers.

peated, is significant.  They were then husband and wife, and not only capable of having common heirs, but anticipating one at the very time the instrument was executed, plaintiff then being *en ventre sa mere*.  The clear meaning of the instrument seems to be that heirs common to the grantor and the life tenant should take the remainder.  The rule is elementary that, where a freehold is given to one person

during life, with remainder over to the heirs of the grantor and another,—as to A, with remainder to the heirs of A and B,—and these are capable of having common heirs; heirs of their common bodies are intended.    See 22 Am. & Eng. Enc. Law (1st Ed.) 506.  And in such a case the rule in *Shelly's Case* has been held not to apply, as particular heirs, and not heirs generally, take, and so do by purchase, rather than by descent.    If, however, it were to be conceded that the language of the deed is of doubtful construction, there is nothing in the record which leads to a different conclusion.    All of the children by the first wife had attained their majority, and had left home.    The grantor was much older than his wife, and might not reasonably expect to live to care for and maintain their offspring until full maturity.    An intention to provide for both wife and child is in entire accord with his situation. It could scarcely have been his purpose, in event of their having no children, to give a part to her heirs, to the exclusion of his own children.    This would have been the result if appellee's contention were to prevail.    One witness testified that she at some time heard the grantor say that he expected the property to be divided equally among the children.    If such evidence were admissible, the time of making the statement does not appear.    If long before the execution of the deed and the expectation of a common heir, it may have been a true expression of what he then wished.    But his situation changed, and with it, possibly, his design in the disposition of his property.    The expressions of the wife to the effect that the property was to be divided between the children when she should be through with it were mere opinions on her part, and not binding on the plaintiff.    They had no relation to the time the deed was executed, and were not in explanation of anything done.    They furnish no aid in ascertaining the grantor's design in employing the particular words found in the deed, and were admissible, if at all, for no other purpose.

It must be assumed, in the absence of any showing to the contrary, that the grantor selected language adapted to express his meaning. See *Taylor v. Taylor*, 118 Iowa, 407. If he did so, there is no escape from the conclusion that he intended the remainder for the issue of himself and wife, the life tenant.—REVERSED.